IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 09-25 Erie |
| | ) | |
| CHAD ZACHARY HOWER | ) | |

**RESPONSE TO DEFENDANT'S MOTION TO SET
A DATE CERTAIN FOR TRIAL, ORDER EXTRADITION OR IN THE
ALTERNATIVE DISMISS THE INDICTMENT**

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Christian A. Trabold, Assistant United States Attorney for said District, and submits this Response to the Defendant's Motion to Set a Date Certain for Trial, Order Extradition, or in the Alternative Dismiss the Indictment:

Chad Hower and Nancy Sue Oberlander are the parents of a son, Aarys Charles Oberlander-Hower, born in 1996 in Tennessee. Aarys is a United States citizen. Chad Hower and Nancy Sue Oberlander were legally married in 1994 and divorced in Tennessee on April 22, 2002. On this same date, a parenting plan, granting Nancy Sue Oberlander custody of Aarys and Chad Hower co-parenting time, was established by agreement of the parties in the Chancery Court for Knox County, Tennessee. At the time of this order, Hower provided the court a location in Finland as his address. The FBI's Legal Attaché Office in Moscow, Russia, determined that at some point in 2002, Hower remarried a Russian citizen, Elena Valeryevna Chevozyorova.

In 2004, Nancy Oberlander moved with Aarys from Tennessee to her home state of Pennsylvania.  Thereafter, on August 12, 2005, an order was issued by the Chancery Court for Knox County, Tennessee, granting Chad Hower custody of Aarys and Nancy Oberlander co-parenting time with her son.  Pursuant to this order, on March 13, 2006, the Chancery Court of Knox County, Tennessee, entered an order setting forth the terms of a parenting plan.  In part, the parenting plan reflected the following excerpt concerning custody of Aarys:

> Aarys shall reside with his father during the school year. Regardless of where Aarys is enrolled in school, the school year shall be defined by the school calendar in Cherry Tree Township, PA.  Father shall provide contact information to the Mother for the child at all times.  Mother shall have coparenting time with Aarys commencing one week from the day that school ends for the year until one week prior to school commencing in the fall.  Mother shall have the right to arrange coparenting time during the school year, subject to arrangements with the child's school for up to 5 days duration with 72 hours notice. Father shall inform Mother of any planned trips to the United States and Father shall provide Mother an opportunity to spend time with Aarys.  Additionally, Mother shall have time with Aarys Christmas, Easter, or Thanksgiving if Father visits the United States with Aarys at this time.

On August 30, 2006, the Court of Common Pleas, Venango County, Pennsylvania, issued an order claiming jurisdiction of the custody case.  Pursuant to that order, an evidentiary hearing was scheduled for November 6, 2006.   In the meantime, pursuant to the Tennessee order, Nancy Oberlander returned Aarys to Chad Hower on September 1, 2006.  Thereafter, on October 9, 2006, Chad Hower, through his attorney, filed an appeal to the Superior Court of Pennsylvania challenging Pennsylvania's jurisdiction over the matter.  In response, the court

found the matter to be unappealable. Subsequently, Hower failed to appear with Aarys at hearings scheduled in the Court of Common Pleas, Venango County, Pennsylvania, on November 6, 2006, and again on December 27, 2006. During the hearing on December 27, 2006, the court issued an order granting Nancy Oberlander custody of Aarys and further ordered Chad Hower to relinquish custody to the mother until such time as the court could conduct a full hearing in the matter.

On April 1, 2008, a bench warrant was issued in the Venango County Court of Common Pleas, for Chad Hower charging him with contempt of court in failing to appear for the December 27, 2006 hearing.

Since Aarys was returned to Chad Hower by Nancy Oberlander on September 1, 2006, Hower retained Aarys outside the United States and away from Nancy Oberlander in contravention of both the Tennessee and Pennsylvania custody orders.

On May 12, 2009, a federal grand jury sitting in Erie, Pennsylvania, returned an indictment charging Chad Hower with international parental kidnapping in violation of Title 18, United States Code, Section 1204. A warrant was issued for Hower's arrest based on the charge in the indictment. The warrant remains valid and executable.

Hower was arrested in Bulgaria on October 13, 2009, pursuant to an Interpol Red Notice relative to this case. A full extradition package was then submitted to Bulgaria on or about November 4, 2009. On November 24, 2009, the extradition hearing was held and the request for extradition from Bulgaria was denied based on

3

lack of dual criminality, meaning Bulgaria denied the American extradition request because Bulgaria did not, at least at that time, have an international parental kidnapping statute. After the denial of the Bulgarian extradition request, Hower traveled to St. Kitts where he has apparently remained ever since. Efforts to extradite Chad Hower from St. Kitts to the United States have been unsuccessful.

### A. The Court has no authority to order St. Kitts to extradite Hower to the United States.

The Court has no authority to order a sovereign nation such as St. Kitts to extradite Hower to the United States. Since Hower is apparently currently residing in St. Kitts, any decision on his extradition to the United States is entirely up to authorities in St. Kitts. Hower has cited no authority for the proposition that this Court can order his extradition from a foreign country. There is a simple reason for that – no such authority exists because Hower's request runs counter to the basic principles of extradition. Just as a foreign court has no authority to order the extradition of an individual from the United States, this Court cannot order St. Kitts to extradite Hower to the United States.

Rather than seek an order from the Court, Hower can simply voluntarily return to the United States any time he wishes. Rather than willingly return, Hower has instead fought and evaded extradition since his indictment. Apparently now that he deems it in his best interest to return to the United States, thirteen years after his indictment, he wants the Court to order his extradition but only under certain conditions. Since the Court has no ability to grant his request, it should be denied.

Hower claims that he is confident he will be acquitted. His claimed confidence is undermined by his thirteen year-refusal to submit to this Court's jurisdiction. Why would someone apparently so confident he will be vindicated wait so long to obtain his supposedly certain acquittal?[1]

### B.  Hower's medical conditions are not life threatening

It appears that Hower, after refusing to submit to this Court's jurisdiction for over thirteen years, now wants to return to the United States for the primary purpose of availing himself of the American medical system. Hower reports that he has a history of irritable bowel syndrome, non-alcoholic fatty liver disease, cholelithiasis, (gallstones), hydronephrosis of the left kidney and kidney stones. Notably, none of these conditions is claimed by Hower to be life threatening. A simple Google search reveals that gallstones that are asymptomatic are left untreated and typically one experiencing symptoms from gallstones has their gall bladder removed. Moreover, hydronephrosis, the swelling of one or both kidneys, in Hower's case the left kidney, "typically affects only one kidney and the other kidney can do the work for both." https://www.mayoclinic.org/diseases-conditions/hydronephrosis (last visited May 24, 2022). Certainly none of these conditions requires an air ambulance for Hower to safely return to the United

---

[1] It is noteworthy that Hower apparently took the unusual step of taking his wife's name in 2008. While Hower claims he did that because of some unspecified threats, the real reason he did so was to attempt to evade the Interpol Red Notice filed against him as the result of the indictment in this case. When arrested in Bulgaria in 2009, Hower had two St. Kitts passports in his possession, both bearing his photo, one in the name Chad Zachary Hower and the other in the name Peter Chevozerov.

States.

Perhaps more importantly, after thumbing his nose at this Court for over thirteen years, Hower is in no position to make demands, bargain about the conditions of his return or the timing of his trial. There is an outstanding arrest warrant for Hower. He should turn himself in to American law enforcement authorities immediately. He is simply in no position, as a fugitive refusing to submit to the jurisdiction of this Court, to make demands.

Having actively sought to avoid justice for well over a decade, while claiming confidence in his acquittal, Hower now impudently seeks an immediate trial but only if he can be transported in an air ambulance at American taxpayer expense because he has irritable bowel syndrome, gallstones and kidney stones, none of which are life threatening. Plainly, Hower has grown tired of the medical treatment in St. Kitts, where he has willingly hidden out for years avoiding trial in the United States. Hower should stop making demands while still avoiding American justice. He should return voluntarily to the United States to answer the charges. While he continues to avoid the American judicial system in a country that he knows will not extradite him to the United States, his baseless demands should be denied by the Court.

### C. Hower is not entitled to a dismissal of his indictment

In the alternative, while a fugitive refusing to submit to this Court's jurisdiction, Hower seeks dismissal of his indictment if his demands are not met. He has not even tried to identify a basis for the dismissal of his indictment.

The Federal Rules of Criminal Procedure provide that a party may file a

pretrial motion raising any defense, objection, or request *that the court can determine without a trial on the merits.* Fed.R.Crim.P. 12(b)(1). Rule 12 "authorizes dismissal of an indictment if its allegations do not suffice to charge an offense, but such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (citing *United States v. Sampson*, 371 U.S. 75, 87-79 (1962)). Thus, it is well settled that a "pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (quoting *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000)).

When evaluating a pretrial motion to dismiss, "a district court must accept as true the factual allegations set forth in the indictment." *Huet*, 665 F.3d at 595 (citing *Sampson*, 371 U.S. at 78-79). "Evidentiary questions - such as credibility determinations and the weighing of proof - should not be determined at this stage." *Huet*, 665 F.3d at 595 (quoting *United States v. Bergin*, 650 F.3d 257, 265 (3d. Cir 2011)). Rather, "[t]he government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." *DeLaurentis*, 230 F.3d at 661. "There is no criminal corollary to the civil summary judgment mechanism." *Huet*, 665 at 595 (citing *DeLaurentis*, 230 F.3d at 661).

There is no basis for a pretrial dismissal of the indictment in this case. Hower does not identify one and none exist. His motion should be denied.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

*/s/ Christian A. Trabold*
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
United States Courthouse
17 South Park Row, Room A330
Erie, Pennsylvania 16501
PA ID 75013